Affirmed and Memorandum Opinion filed April 3, 2008








Affirmed and Memorandum Opinion filed April 3, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-01088-CR

_______________

 

LISA MARGARET HUNTER-ODULATE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                        
                       

On Appeal from the 209th District Court

Harris County, Texas

Trial Court Cause No. 989113 

                                                                                                                                
               

 

M E M O R A N D U M   O P I N I O N








Appellant Lisa Margaret
Hunter-Odulate was convicted of aggravated robbery and sentenced to eight years
confinement in the Texas Department of Criminal Justice, Institutional
Division.  In her first two issues, she challenges the legal and factual sufficiency
of the evidence to support her conviction.  In her second and third issues,
appellant contends the trial court abused its discretion in denying her a
mistrial based on (1) improper jury argument and (2) an improper comment on her
silence during questioning.  Because we conclude the evidence is legally and
factually sufficient and the trial court properly denied her requests for
mistrial, we affirm the judgment.

I.  Factual and Procedural Background

On May 27, 2004, appellant was
indicted for the offense of aggravated robbery, alleged to have occurred on or
about January 1, 2004.  At her trial, which occurred in late November 2006, the
State presented testimony from the complaining witness and several Houston
Police Department (AHPD@) officers, summarized below.

HPD Sergeant James Wright testified
that he was dispatched to a game room in the 6800 block of Gessner in Houston
in the early morning hours of January 2, 2004, in response to an aggravated
robbery that had occurred around midnight on January 1, 2004.  According to
Wright, when he arrived at the game room, he found the complaining witness,
Nizar Ali, shaken up and scared.  He saw that most of the games in the
establishment had been broken into and damaged.  Wright stated that he found an
extension cord lying in the floor in the back bathroom.  According to Wright,
Ali identified three suspects: two males and a female.  Ali described the
female suspect, as well as her vehicle, which Ali identified as a silver
four-door Hyundai with slight damage on the rear bumper.  Wright testified that
Ali provided a partial license plate number.  A print unit was called to the
scene, but Wright stated that no leads in the investigation came out of the
processing of the crime scene.  Wright further stated that HPD was unable to
find any suspects based on the information provided by Ali at the scene.  On
cross-examination, Wright admitted that, from the back bathroom, a person could
not see what was occurring in the main part of the game room.








The complaining witness, Nizar Ali,
described the game room, which he had purchased several months before the
robbery occurred.  The game room had numerous video games to play, with players
winning tickets.  The tickets could then be turned in for prizes.  Ali
described the prize cases in the game room as containing items such as leather
purses, watches, jewelry, and perfume.  According to Ali, the windows of the
game room were tinted to keep the inside dark so the graphics on the games
would look better.  Ali stated that he always kept the door to the game room
locked; Ali only unlocked the door to let people in after they rang a bell. 
Ali testified that appellant gave her name as ACynthia,@ and had been a customer of the game
room before the evening of the robbery.  According to Ali, appellant came into
the game room on the evening of January 1 at around 11 p.m.  After playing
games for a while, appellant told Ali that she needed to leave to get some
cash.  Ali stated that he saw appellant get into a silver Hyundai and drive
away, presumably to get cash.  Sometime after the other customers left the game
room, appellant returned.  Ali told appellant that he was closing at midnight,
but let her in to play games.  

Ali testified that shortly after
appellant entered the game room, a car pulled into the parking lot and two
young African American men got out and approached the game room.  Although Ali
initially refused to let them in, they stated that appellant was their sister. 
Because appellant indicated to Ali that the men were her brothers, Ali unlocked
the door and let them into the game room.  Ali stated that, as he was locking
the door after the men entered, one of the men approached him from behind and
hit him with what Ali thought was a gun.  According to Ali, the men pointed a
gun at him and ordered him to lay down on the floor.  Fearing for his life, Ali
complied.  As he lay down, Ali saw appellant move toward the area where he kept
his cash box; he also stated that he saw appellant Acleaning up.@  Ali stated that appellant gave no
indication she was scared or surprised by the robbery.  Ali testified that the
men then dragged him into the bathroom and tied his hands behind his back with
a phone cord.  








According to Ali, one of the men
stayed in the bathroom with him, pointing a gun at his head.  While he was
lying on the bathroom floor, he heard the other male suspect asking for
cutters.  He did not hear any response, but then heard cutting and breaking of
machines. He then heard both male and female voices asking for keys to the
prize cases; in response to the requests, the male suspect standing over Ali
with the gun searched Ali=s pockets, finding Ali=s keys, cash, and wallet.  Ali
described hearing the show cases being unlocked and the sound of what he
thought was a garbage bag being opened and items being put into the bag. 
Shortly thereafter, Ali stated he was ordered not to move and then all three
suspects left together.  After waiting about ten minutes because he was
frightened, Ali managed to untie the cord around his arms and get out of the
bathroom.  He then called 911 to report the robbery.  When Ali looked around
the game room, he saw that the games all had broken locks and appeared empty.

Ali testified that when police
arrived about twenty minutes after he called, he described the female suspect
to the officers.  He also gave a description of her vehicle and a partial plate
number, telling the officers that he thought the last three digits of the
license plate were ANF4.@  He described the two male suspects as 20- to 25-year-old
African American men and the female suspect as a slightly Achubby@ 40- to 45-year-old African American
female with a mole on her face.  According to Ali, he informed the police
officers about the items and cash stolen, indicating that over $2,000 in cash
had been taken, as well as several leather purses, watches, jewelry, and
perfume sets.  

Ali stated that HPD was unable to
find the suspects based on the information he provided immediately following
the robbery.  According to Ali, however, appellant returned to the game room
about two months later, seeking entry by ringing the bell.  Ali did not let her
in, but he took down the full license plate number of her car.  He also stated
that appellant was carrying a leather purse that he recognized as being one of
the ones stolen the night of the robbery.  Ali testified that he called HPD,
gave his case number from the robbery, and reported appellant=s full license plate number.  Later,
he met with a police officer at the HPD station to attempt to identify
appellant from a photographic array.  Based on the photographs provided, Ali
was able to identify appellant as the female suspect from the robbery; he
signed his name on her photograph and the array was admitted into evidence at
trial.  While being cross-examined, however, Ali testified that he never saw
appellant with a gun and that it was dark inside the game room.








Glenn Ebers, an investigator with the
HPD Robbery Division, confirmed much of Ali=s testimony.  He stated that,
initially, he was unable to identify any of the suspects from the robbery based
on the information obtained during the investigation immediately following it. 
But he explained that on April 19, 2004, he got a voice mail message from Ali,
who stated that he had seen the female suspect at the game room again and was
able to provide the full license plate number from her car.[1] 
Ebers stated that the license plate number provided by Ali was registered on a
2000 silver four-door Daewoo,[2] owned by
appellant and a male he assumed was her husband.  Based on this information,
Ebers testified that he generated a photographic array using appellant=s driver=s license photograph and several
similar photographs from the same database.  Ebers stated that on May 26, 2004,
he showed the photographic array to Ali and that Ali identified appellant as Athe one@ who had been involved in the robbery
on January 1, 2004 at the game room.  

Ebers testified that he interviewed
appellant regarding the robbery.  When asked to describe her demeanor during
the interview, Ebers stated she was calm and Adidn=t seem to be concerned about her
situation.@  Appellant=s trial counsel objected to this response, stating that it
violated her Fifth Amendment right to remain silent.  The trial court sustained
the objection, instructed the jury to disregard, and denied appellant=s request for a mistrial.  At the
conclusion of Ebers= testimony, the State rested.








In her defense, appellant called one
witness and testified herself.  First, Ledisi Meneno testified for appellant. 
According to Meneno, he and appellant had attended a New Year=s Eve party together on December 31,
2003.  Meneno stated that he and appellant were together on New Year=s day.  Although appellant left at
7:00 a.m. the morning of January 1, 2004, Meneno testified that they went to
dinner at a restaurant about 8:00 p.m. that evening.  After dinner, the two
returned to Meneno=s apartment and watched TV; Meneno stated that he fell asleep
about 11:00 p.m. while appellant was there.  When he awoke about an hour later,
appellant was still there.  According to Meneno, appellant was gone by the time
he woke up the morning of January 2, 2004 at around 10:00 or 11:00 a.m.  On
cross examination, Meneno admitted that he and appellant had a Aboyfriend-girlfriend@ relationship.  He also stated that
he had no idea whether she had been at the apartment during the times he was
asleep.

Appellant testified that, at the time
of the robbery, she was having an affair with Meneno.  She also stated that the
first time she went to the game room was in April 2004, although she later
stated she had been to the facility about four months before the robbery.  She
repeatedly testified that she was not there on January 1, 2004.  She also
stated that she was with Meneno at his apartment on January 1, although she
left some time in the morning to get a change of clothing from her house and
returned to the apartment.  She admitted that she told the investigating
officer, Ebers, that she had never been to the game room and that she had been
at a motel on January 1.  During cross-examination, appellant also admitted
that the story she told police during her interview on June 8, 2004, and the
story she was telling the jury at trial differed.  After her testimony, the
defense rested.

The State then recalled Ebers as a
rebuttal witness.  He testified that appellant told him she had never been to
the game room.  According to Ebers, appellant also stated she had spent January
1, 2004, at a motel and at some parties.  On cross-examination, Ebers admitted
that appellant had informed him during her interview that she had been having
an affair with Meneno.  

Both sides then rested and closed,
and the trial court charged the jury.  The jury deliberated and found appellant
guilty of aggravated robbery as charged in the indictment.  After a brief
punishment hearing, the jury assessed punishment at confinement in the
Institutional Division of the Texas Department of Criminal Justice for eight
years.  This appeal timely ensued.      








II.  Issues Presented

In her first two issues, appellant
challenges the legal and factual sufficiency of the evidence to support her
conviction.  In her third and fourth issues, appellant asserts that the trial
court erred in refusing to grant a mistrial in response to the prosecution=s comment regarding appellant=s hiring of the alleged co-actors
during closing argument and in response to an alleged comment on her failure to
testify.

III. 
Analysis

A.        Sufficiency of the Evidence

Appellant=s sufficiency challenges focus on the
lack of evidence regarding her actions once the two unknown male suspects
entered the game room.  She challenges the sufficiency of the evidence to
establish that she assisted these men when they began robbing the complainant. 
She further asserts that there was no evidence that she even remained in the
game room once the robbery began.  

1.         The
Charged Offense

The jury charge, in accord with the
indictment, authorized the jury to convict appellant of aggravated robbery,
either as a principal or as a party, under Texas Penal Code sections
7.02(a)(2), 29.02(a)(2), and 29.03(a)(2):








Now, if you find from the evidence beyond a reasonable doubt that on or
about the 1st day of January, 2004, in Harris County, Texas, the
defendant, Lisa Margaret Hunter-Odulate, did then and there unlawfully, while
in the course of committing theft of property owned by Nizar Ali and with
intent to obtain or maintain control of the property, intentionally or
knowingly threaten or place Nizar Ali in fear of imminent bodily injury or
death, and the defendant did then and there use or exhibit a deadly weapon,
to-wit: a firearm; or if you find from the evidence beyond a reasonable doubt
that on or about the 1st day of January 2004, in Harris County,
Texas, an unknown person or persons, did then and there unlawfully, while in
the course of committing theft of property owned by Nizar Ali and with intent
to obtain or maintain control of the property, intentionally or knowingly
threaten or place Nizar Ali in fear of imminent bodily injury or death, and the
unknown person or persons did then and there use or exhibit a deadly weapon,
to-wit: a firearm, and that the defendant, Lisa Margaret Hunter-Odulate, with
the intent to promote or assist the commission of the offense, if any,
solicited, encouraged, directed, aided or attempted to aid the unknown person
or persons to commit the offense, if she did, then you will find the defendant
guilty of aggravated robbery as charged in the indictment.

Because the use of a deadly weapon is
an element of the offense of aggravated robbery, the State automatically
carries the burden of proving appellant knew a deadly weapon would be used or
exhibited in the commission of the offense.  Sarmiento v. State, 93
S.W.3d 566, 570 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d).  Thus, before the jurors were
authorized to find appellant guilty, even as a party, they had to first believe
beyond a reasonable doubt appellant knew a deadly weapon would be used in the
commission of the robbery.  Id. (citing Johnson v. State, 6
S.W.3d 709, 714 (Tex. App.CHouston [1st Dist.] 1999, pet. ref=d)).  

2.         Legal
Sufficiency

When reviewing the legal sufficiency
of the evidence, we do not ask whether we believe the evidence at trial
established guilt beyond a reasonable doubt.  Jackson v. Virginia, 443
U.S. 307, 318‑19, 99 S.Ct. 2781, 2789 (1979).  Rather, we examine all the
evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Id. at 319, 99 S.Ct. at 2789; Mason v.
State, 905 S.W.2d 570, 574 (Tex. Crim. App. 1995) (en banc).  Our review of
the evidence includes both properly and improperly admitted evidence.  Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  We consider both
direct and circumstantial evidence, and all reasonable inferences that may be
drawn therefrom in making our determination.  Id.  








AEvidence is sufficient to convict
under the law of parties where the defendant is physically present at the
commission of the offense and encourages its commission by words or other
agreement.@  Salinas v. State, 163 S.W.3d 734, 739 (Tex. Crim. App. 2005)
(quoting Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)
(op. on reh=g)).  Events occurring before, during, and after the commission of the
offense may show party participation; courts may rely on actions of the
defendant that Ashow[] an understanding and common design@ to commit the offense.  Id.
at 739B40.  Finally, circumstantial evidence
may be used to prove party status.  Ransom, 920 S.W.2d at 302.

Appellant=s legal sufficiency argument rests on
two main allegations: (1) there was no evidence that appellant aided in the use
or carrying of the firearm; and (2) the fact that she Aeffectuated@ the two male suspects= entry into the game room by claiming
to know them was not a crime Ain and of itself.@  We address each of these arguments
in turn, then discuss the legally sufficient evidence establishing appellant=s guilt.

First, because appellant was charged
as a party as well as a principal, the State did not need to establish she used
or carried the firearm; instead, the State had to prove that she knew a deadly
weapon would be used in the commission of the robbery.  See Sarmiento,
93 S.W.3d at 570.  In this case, the complainant, Nizar Ali, testified that
appellant did not appear surprised or otherwise react to the fact that the
unknown males brandished a gun during the robbery.  From Ali=s testimony, the jury could infer
that appellant=s lack of reaction to the use of the firearm meant she knew that it would
be used during the commission of the robbery.  








Second, although appellant=s assistance in convincing Ali to let
the armed robbers into the game room is not, by itself, a crime, we may look to
events occurring before, during, or after the offense to establish appellant=s party participation.  Salinas,
163 S.W.3d at 739B40. Before the offense, appellant frequented the game room
and identified herself to Ali with a fictitious name.  On the evening of the
robbery, appellant left the game room, only returning after all the other
customers had departed.  She convinced Ali to let the men into the game room by
claiming that they were her brothers.  Based on Ali=s testimony summarized above, the
jury could reasonably infer that appellant gathered the cash from the cash box,
requested the keys to the game room prize cases, helped find lock cutters to
open the locks on the games, and left with the men.  Finally, Ali testified
that when appellant returned to the game room several months after the robbery,
she was carrying one of the purses that had been stolen during the robbery. 

Each of these acts establishes
appellant=s Aunderstanding and common design@ to commit the aggravated robbery.  See
id.  Viewing this evidence in the light most favorable to the verdict, we
conclude that a rational trier of fact could have found that appellant was a
party to the commission of the offense of aggravated robbery.  We therefore
overrule appellant=s first issue.

3.         Factual
Sufficiency

When reviewing the factual
sufficiency of the evidence, we view all the evidence in a neutral light and
set aside the verdict Aonly if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.@  Cain v. State, 958 S.W.2d
404, 407 (Tex.Crim.App.1997) (en banc) (quoting Clewis v. State, 922
S.W.2d 126, 129 (Tex.Crim.App.1996) (en banc)).  Before we may reverse for
factual insufficiency, we must first be able to say, with some objective basis
in the record, that the great weight and preponderance of the evidence
contradicts the jury=s verdict.  Watson v. State, 204 S.W.3d 404, 417 (Tex.
Crim. App. 2006).  When reviewing the evidence, we must avoid intruding on the
factfinder=s role as the sole judge of the weight and credibility of the witness
testimony.  See Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000)
(en banc). We do not re‑evaluate the credibility of witnesses or the
weight of evidence, and we will not substitute our judgment for that of the
factfinder.  Johnson v. State, 967 S.W.2d 410, 412 (Tex. Crim. App.
1998).  Finally, we must discuss the most important and relevant evidence that
supports the appellant=s argument on appeal.  Sims v. State, 99 S.W.3d 600,
603 (Tex. Crim. App. 2003). 








Appellant asserts that the State Anever offered evidence that [she]
aided or assisted in the commission of the robbery.@  We disagree.  The evidence
discussed  above establishes that appellant was a party to the
aggravated robbery.  And despite appellant=s claims that she was not in the game
room, the jury is the sole judge of the weight and credibility of the witnesses=s testimony.  See Johnson, 23
S.W.3d at 9.  Finally, although Meneno indicated appellant was with him on the
evening in question, he admitted that he was asleep for at least part of the
evening and that he was not aware whether appellant remained in his apartment
while he was asleep.

Viewing all the evidence in a neutral
light, we cannot say that the jury=s verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.   We
therefore overrule appellant=s second issue.

B.        Motions
for Mistrial

In her final two issues, appellant
asserts the trial court erred in denying her motions for mistrial.  First, she
asserts that the State injected new and harmful facts into the case during
closing argument by asserting that appellant had hired the two men who assisted
in the robbery.  Second, she contends that the trial court should have granted
a mistrial following the State=s introduction of testimony regarding her demeanor during
questioning because such demeanor testimony was an improper comment on her
post-arrest silence in violation of the law and her constitutional rights.

1.         Standard
of Review

We review the trial court=s denial of a motion for mistrial
under an abuse‑of‑discretion standard.  Hawkins v. State,
135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (en banc).  A mistrial is an extreme
remedy for prejudicial events that occur at trial and should therefore be
exceedingly uncommon.  Austin v. State, 222 S.W.3d 801, 815 (Tex. App.CHouston [14th Dist.] 2007, pet. ref=d).  A mistrial should only halt
trial proceedings when an error is so prejudicial that continuing the trial
would be wasteful and futile because an impartial verdict cannot be reached or
a conviction would have to be reversed on appeal due to obvious error. See
Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).  We conduct our
harm analysis in light of any curative instruction by the trial court.  Hawkins,
135 S.W.3d at 77. 








2.         Comments During Closing Argument

In issue three, appellant complains
that the trial court erred in denying her motion for mistrial after the
following comments were made by the State during closing argument, AAnd [appellant] waited until that
last person left and she came back and she sat at that machine and she waited
some more.  And guess who came along?  The two people that she had hired to get
together with her.@  

Appellant objected that this
statement was outside the record.  The trial court sustained the objection and
instructed the jury as follows, AThe last statement was not in
evidence.  You will disregard the last statement >hired anybody.=@ Appellant moved for a mistrial,
which the trial court denied.  We agree with the trial court that the statement
by the prosecutor was inappropriate.  But we do not agree with appellant that
this statement warrants reversal.

Generally, argument may include (a)
summation of the evidence, (b) reasonable deductions from the evidence, (c)
answers to argument of opposing counsel, and (d) pleas for law enforcement.  Wesbrook
v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (en banc).  But even
when argument exceeds the bounds of these permissible areas, it will not
require a mistrial unless, in light of the entire record, the argument is
extremely improper, violates a mandatory statute, or injects new and harmful
facts into the proceedings.  Id.  Further, the Aremarks must have been a willful and
calculated effort on the part of the State to deprive appellant of a fair and
impartial trial.@  Id.  Finally, an instruction to disregard will
generally cure the error.  Id.








Here, the prosecutor misspoke when
she claimed appellant hired her accomplices.  But the trial court sustained
appellant=s objection and promptly instructed the jury to disregard.  We presume
the jury followed the trial court=s instruction to disregard.  See
id. at 116.  Further, the prosecutor quickly apologized and stated that
appellant=s accomplices were A[t]he two people that she worked with.@  We cannot say that this comment is so
flagrent as to warrant the drastic remedy of mistrial.  See id. at
115-16.  Because the trial court did not abuse its discretion in denying
appellant=s request for a mistrial, we overrule her third issue.

3.         Alleged Comment on Appellant=s Post-Arrest Silence/Failure to
Testify

While
HPD robbery division investigator Ebers was testifying, the State questioned
him about his interview of appellant.  After detailing the legal warnings he
had provided appellant and stating that appellant waived her rights orally, the
State asked Ebers to comment on appellant=s demeanor during the interview.  In
response, Ebers stated, AShe was calm and didn=t seem to be concerned about her
situation.@  Appellant=s counsel objected, stating specifically that Eber=s last statement violated appellant=s Fifth Amendment right to remain
silent.

In her fourth issue, appellant
contends the trial court erred by refusing her request for a mistrial because
this statement constituted an improper comment on her failure to testify in
violation of the law and her state and federal constitutional rights.  But, as
illustrated above, appellant only preserved her complaint as it relates to her
Fifth Amendment right to silence under the United States Constitution.  See,
e.g., Heidelberg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App.
2004) (en banc) (holding that an objection based on the Fifth Amendment was not
sufficient to preserve complaint on appeal that rights to post-arrest silence
under the Texas Constitution had been violated).  Thus, we address her
complaint only as it relates to her federal constitutional right to silence.

The Fifth Amendment=s prohibition against
self-incrimination is violated by a comment on a defendant=s post-arrest silence.  Dinkins v.
State, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995) (en banc).  Such a
comment is tantamount to a comment on a suspect=s failure to testify at trial because
it raises an inference of guilt from the invocation of a constitutional right. 
Id.  The prohibition against commenting on post-arrest silence Aincludes testimony regarding a
defendant=s contrition or remorse because such testimony can only come from the
defendant.@  Id.  








As indicated above, Ebers provided appellant
with the necessary legal warnings at the outset of his interview. 
Specifically, Ebers testified that he warned appellant as follows:

You have the right to remain silent and not make any statement at all
and that any statement you make may be used against you and probably will be
used against you at your trial.  Any statement you make may be used as evidence
against you in court.

You have the right to have a lawyer present to advice [sic] you prior
to and during any questioning.  If you are unable to employ a lawyer, you have
the right to have a lawyer appointed to advise you prior to and during any
questioning.

You have the right to terminate this interview at any time.

According to Ebers, appellant
indicated she understood these warnings and legal rights, and orally agreed to
waive her rights.   

An improper comment on a suspect=s post-arrest silence does not lead
to automatic reversal.  Id.  Generally, an instruction to disregard an
improper comment on a defendant=s post-arrest silence is sufficient to cure any harm.  Ho
v. State, 171 S.W.3d 295, 306 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d) (op. on reh=g).  In this case, the trial court
issued the following prompt and strongly worded instruction to disregard:

Members of the jury[,] the last statement was not responsive at all. 
We=re asking her demeanor.  Demeanor only, how she
looked.  I=m going to tell you right now when you go back there
and deliberate if anybody brings up the last statement by the investigator, if
someone calls me, writes me a note, I=m
going to declare a mistrial immediately.

Can everybody disregard that and take everything else into
consideration, but not that statement by the detective or the investigator,
please?  If you can=t[,] let me know and we=ll declare a mistrial right now.  Good.

This prompt instruction to disregard
sufficiently cured any harm that may have resulted from Ebers= allegedly improper comment.[3] 









Under these circumstances, we
conclude the trial court did not abuse its discretion in denying appellant=s motion for mistrial.  Accordingly,
we overrule appellant=s final issue.  

IV.  Conclusion

In sum, legally and factually
sufficient evidence supports appellant=s conviction for aggravated robbery. 
Moreover, the trial court did not abuse its discretion in denying appellant=s requests for mistrial.  Having
overruled each of appellant=s four issues, we affirm the judgment of the trial court.         

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Memorandum
Opinion filed April 3, 2008.

Panel consists of Justices Yates,
Fowler, and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  Initially, Ali had indicated that he believed the
last three digits of appellant=s vehicle were ANF4.@  But when Ali
later reported the full license plate number to police after seeing appellant=s car again, he gave the digits as AW49 NFP.@ 





[2]  Ebers also stated that Hyundais and Daewoos are very
similar vehicles.





[3]  Moreover, any error in the admission of evidence is
generally rendered harmless when the jury later hears similar evidence without
objection.  See Lane v. State, 151 S.W.3d 188, 192B93 (Tex. Crim. App. 2004).  Here, appellant=s trial counsel indicated, prior to this statement
being made, that appellant would testify; thus she did not decide to testify to
overcome the impact of the objected-to evidence.  See Leday v. State,
983 S.W.2d 713, 718B19 (Tex. Crim. App. 1998) (en banc) (noting that one
of the exceptions to the generally accepted rule that error in admission of
evidence is harmless when similar evidence is admitted without objection occurs
when a defendant decides to testify to overcome the impact of the objected-to
evidence).  After appellant testified, Ebers was recalled and offered similar
testimony regarding appellant=s demeanor and
behavior during her interview.